UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | | | |
|---|---|---|---|
| MICHAEL E. SMITH, | ) | | |
| | ) | | |
| Plaintiff, | ) | | |
| | ) | | |
| v. | ) | No.: | 3:12-CV-238 |
| | ) | | (VARLAN/SHIRLEY) |
| CAROLYN W. COLVIN, | ) | | |
| Commissioner of Social Security, | ) | | |
| | ) | | |
| Defendant. | ) | | |

## MEMORANDUM AND ORDER

Before the Court is the plaintiff's Motion for Judgment on the Pleadings and Brief in Support [Docs. 13 and 14] and defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 17 and 18]. Plaintiff Michael E. Smith ("Plaintiff") seeks judicial review of the decision by Administrative Law Judge ("ALJ"), the final decision of the defendant Carolyn W. Colvin, Commissioner of Social Security ("the Commissioner").

On December 1, 2008, the Plaintiff filed an application for supplemental security income, claiming a period of disability, which began on April 1, 2005. [Tr. 114-20]. After his application was initially denied and denied again upon reconsideration, the Plaintiff requested a hearing. [Tr. 73-74]. On June 24, 2010, a hearing was held before an ALJ to review the Plaintiff's claim. [Tr. 26-51]. On October 8, 2010, the ALJ found that the Plaintiff was not disabled. [Tr. 12-21]. The Appeals Council denied the

Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner.

The Plaintiff now seeks judicial review of the Commissioner's decision.

## I.     ALJ FINDINGS

The ALJ made the following findings:

1. The claimant has not engaged in substantial gainful activity since November 6, 2008, the application date (20 CFR 416.971 *et seq.*).

2. The claimant has the following severe impairments: status post pacemaker, adrenal and thyroid deficiency, and depressive disorder, not otherwise specified (20 CFR 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).

4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b). He can understand, remember, and attend to simple and detailed, but not more complex instructions. He cannot interact with the general public in an effective manner, but can with some difficulty interact with and get along with peers/authority figures. He can adapt to gradual changes and set limited realistic goals despite difficulty.

5. The claimant is unable to perform any past relevant work (20 CFR 416.965).

6. The claimant was born on May 10, 1967[,] and was 41 years old, which is defined as a "younger individual" on the date the application was filed (20 CFR 416.963).

> 7. The claimant has a high school equivalency diploma and is able to communicate in English (20 CFR 416.964).
>
> 8. Transferability of job skills is not an issue in this case because the claimant's past relevant work is unskilled (20 CFR 416.968).
>
> 9. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).
>
> 10. The claimant has not been under a disability, as defined in the Social Security Act, since November 6, 2008, the date the application was filed (20 CFR 416.920(g)).

[Tr. 14-21].

## II. DISABILITY ELIGIBILITY

To qualify for SSI benefits, a plaintiff must file an application and be an "eligible individual" as defined in the Act. 42 U.S.C. § 1382(a); 20 C.F.R. § 416.202. An individual is eligible for SSI if he has financial need and he is aged, blind, or under a disability. See 42 U.S.C. § 1382(a).

"Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other

3

kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

1. If claimant is doing substantial gainful activity, he is not disabled.

2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.

3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.

5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

4

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. 405(g). Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007) (quotation omitted); see also Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)).

It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case

5

de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004). The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547.

On review, Plaintiff bears the burden of proving her entitlement to benefits. Boyes v. Sec'y of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

## IV. POSITIONS OF THE PARTIES

The Plaintiff presents two issues. First, he asserts that the ALJ's decision failed to address the inconsistencies between the residual functional capacity determination and

6

the opinion of Tracy Allred, Ed.D. [Doc. 14 at 1]. Second, the Plaintiff argues that the ALJ failed to discuss Medical Listing 12.05C. [Id. at 1-2].

The Commissioner responds that Dr. Allred's reports were not the only medical evidence in the file and that the ALJ was not obligated to assume that the Plaintiff had marked limitations. [Doc. 18 at 5]. In addition, the Commissioner argues that the Plaintiff has not demonstrated he meets Medical Listing 12.05C. [Id. at 5-6].

## V.   ANALYSIS

The Court will analyze the issues in turn.

### A.   Tracy Allred, Ed.D

The Plaintiff argues that the ALJ failed to explain the inconsistencies between Dr. Allred's findings and the residual functional capacity determination. [Doc. 14 at 1]. Specifically, he asserts that the ALJ's decision does not incorporate Dr. Allred's moderate-to-marked restrictions. [Id. at 8]. The Plaintiff contends that the ALJ's failure to address the inconsistency is not harmless error. [Id. at 15].

Dr. Allred examined the Plaintiff on two occasions. [Tr. 231-34; 389-92]. On March 12, 2009, she reported that the Plaintiff's psychomotor behavior was restless and that his speech was slow. [Tr. 232]. The Plaintiff had good hygiene, and his attitude was cooperative. [Tr. 232]. The Plaintiff reported that he experienced auditory hallucinations, but Dr. Allred noted that delusions were not evident. [Tr. 232]. She stated that the Plaintiff's thought processes were logical and that he was fully oriented with regard to time, place, and person. [Tr. 232]. Dr. Allred also noted that the

7

Plaintiff's cognitive ability was marked by delays and that his intelligence fell within the borderline range; however, his judgment ability was fair. [Tr. 232]. Dr. Allred stated that the Plaintiff had a history of crack cocaine abuse and a lengthy criminal history, including aggravated assault, stealing, probation violation, and drug convictions. [Tr. 232]. After noting his symptoms, which included depression, difficulty with concentration, and irritability, Dr. Allred stated that "[d]ifferential diagnosis was difficult given the array of symptoms presented by the client[,] as well as the complication of him reporting that he had had surgery which resulted in some of his increased symptoms." [Tr. 232]. The Plaintiff reported that he cooks, does the laundry, shops for groceries, walks his dog twice a day, feeds his dog, and cleans the house. [Tr. 233]. He reported that on bad days, he feels tired, has no energy, and he becomes irritable. [Tr. 233]. Dr. Allred diagnosed the Plaintiff with a mood disorder, NOS, (client reported auditory hallucinations); cocaine abuse (client reported in remission of four years); borderline intellectual functioning; and by history pacemaker, pituitary gland removal, and fibroid problems. [Tr. 234]. She concluded:

> The patient's work-related activities are limited as follows:
>
> A. Ability to understand and remember is moderately to markedly limited. The client's intellectual level falls within the borderline range. He was slow to respond and struggled throughout the evaluation.
>
> B. Ability to sustain concentration and persistence is moderately limited due to intellectual delays as well as a mood disorder with reported features of auditory hallucinations.

8

> C. Social interaction is moderately to markedly limited due to a mood disorder as well as a history of aggressive type behavior. He has been in prison in the past for aggravated assault.
>
> D. Ability to adapt and tolerate stress associated with daily activities is difficult to ascertain. It was difficult to differentiate between medical complications and that which were mental health. He also has question of some drug induced symptoms. The client has a history of cocaine abuse. He presents with an array of mental health symptoms including borderline intellectual functioning.

[Tr. 234].

On August 11, 2010, Dr. Allred examined the Plaintiff again. [Tr. 389-92]. Although she was unable to retrieve medical documentation, many of the same notes were made as the Plaintiff's previous examination. [Tr. 389-92]. The Plaintiff reported that he was first seen at Ridgeview in 1997, but Dr. Allred noted that the Plaintiff was a poor historian. [Tr. 389]. Dr. Allred stated that the Plaintiff's psychomotor behavior was restless and that he presented with a depressed mood. [Tr. 390]. However, she also noted that his speech was normal and affect was appropriate. [Tr. 390]. The Plaintiff's cognitive ability was marked. [Tr. 391]. Dr. Allred stated that the Plaintiff displayed positive depressive symptoms, as well as drug use. [Tr. 391]. Dr. Allred opined that the Plaintiff experienced a mood disorder, NOS, (rule out Bipolar Disorder) and by history heart pacemaker, high cholesterol, pituitary glands removed. [Tr. 391]. Dr. Allred concluded:

> This patient's work-related activities are limited as follows:

9

> A. Ability to understand and remember is mildly limited due to deficits noted on the mental status evaluation as well as throughout the clinical interview.
>
> B. Ability to sustain concentration and persistence is moderately limited due to features of a mood disorder.
>
> C. Social interaction is moderately to markedly limited due to features of a mood disorder marked by a possible bipolar disorder with paranoid features.
>
> D. Ability to adapt and tolerate stress associated with day-to-day activities is moderately to markedly limited due to features of a mood disorder marked by a possible bipolar disorder.

[Tr. 392].

On the Plaintiff's Medical Source-Statement of Ability to do Work-Related Activities, Dr. Allred marked "mild" in the following categories: understand and remember complex instructions; carry out complex instructions; and the ability to make judgments on complex work-related decisions. [Tr. 393]. In addition, she reported that the Plaintiff displayed moderate-to-marked limitations in the following categories: interacting appropriately with the public, supervisors, and co-works; responding appropriately to usual work situations and to changes in a routine work setting; and adapting and tolerating stress. [Tr. 394]. Finally, she noted that the Plaintiff's ability to sustain concentration and persistence was moderately limited. [Tr. 392].

The ALJ's decision discussed Dr. Allred's assessments in detail. [Tr. 15]. With regard to Dr. Allred's opinion, the ALJ stated that it was "largely consistent with the assessments of the reviewing State Agency psychologists who found that the claimant has moderate to marked limitations." [Tr. 19]. The ALJ gave deference to Dr. Allred's

10

opinion and the "State Agency psychologist's determinations [because they were] credible and supported by the claimant's intermittent treatment notes, conservative mental health treatment, and reported daily activities." [Tr. 19].

Specifically, the Plaintiff argues that the ALJ failed to mention Dr. Allred's 2009 opinion that he was moderately-to-markedly limited with regard to the ability to understand and remember; that the social limitations apply to supervisors, co-workers, and the general public; and Dr. Allred's 2010 opinion that he displayed moderate-to-marked limitations with the ability to adapt and tolerate stress. [Doc. 14 at 14]. In support of his argument the Plaintiff cites Social Security Ruling 96-8p and 20 C.F.R § 404.1527(e)(2)(ii). Social Security Ruling 96-8p states, "If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1196 WL 374184, at *7 (July 2, 1996). In addition, 20 C.F.R. § 404.1527(e)(2)(ii) states that the ALJ "will evaluate the findings using the relevant factors in paragraphs (a) through (e)" and that the ALJ "must explain in the decision the weight given to the opinions of the State agency."

The Court finds several problems with the Plaintiff's argument. First, the ALJ fully discussed Dr. Allred's opinions and stated that deference was given to her opinions. [Tr. 15, 19]. Second, the residual functional capacity assessment is consistent with Dr. Allred's opinions. See Wilson, 378 F.3d at 547 ("There is also the possibility that if the Commissioner adopts the opinion of the treating source or makes findings consistent with the opinion, such weight is correspondingly irrelevant."). The actual problem is that Dr.

11

Allred's opinions are somewhat inconsistent with one another. For example, in 2009, Dr. Allred stated that the Plaintiff's ability to understand and remember was moderately-to-markedly limited, but later in 2010, she opined that the Plaintiff demonstrated only mild limitations. The ALJ concluded that the Plaintiff could understand, remember, and attend to simple and detailed instructions but not more complex instructions. [Tr. 17]. In addition, with regard to the ability to adapt, Dr. Allred opined in 2009 that "it was difficult to differentiate." [Tr. 234]. She noted that the Plaintiff may have drug-induced symptoms and presents borderline intellectual functioning. [Tr. 234]. However, in 2010, she opined that the Plaintiff demonstrated moderately-to-marked limitations and may have bipolar disorder. [Tr. 392]. The residual functional capacity states that the Plaintiff can adapt to gradual changes and set limited realistic goals despite difficulty. [Tr. 17]. It appears as a whole that the residual functional capacity is consistent with Dr. Allred's less restrictive opinions. The Court notes that the decision to incorporate Dr. Allred's less restrictive assessment is supported by substantial evidence, which the ALJ fully explained.

For example, the ALJ gave weight to the psychiatric review technique completed by George T. Davis, Ph.D., who based his opinion on Dr. Allred's 2009 report. Dr. Davis opined that the Plaintiff was able to (1) understand and remember simple and detailed instructions but not more complex instructions; (2) attend to simple and detailed but not more complex tasks; (3) interact with and get along with peers and authority figures with some difficulty; and (4) adapt to gradual changes and set limited realistic goals despite

12

some difficultly. [Tr. 252]. He also opined that the Plaintiff could not interact with the general public in an effective manner. [Tr. 252]. Dr. Davis's opinion is consistent with the residual functional capacity determination, see supra 2. [Tr. 17].

The ALJ also discussed the lack of evidence in the record to support the Plaintiff's allegations. [Tr. 19]. The ALJ stated that from December 2008 to April 2010, the Plaintiff was seen at the Ridgeview Psychiatric Hospital and Center ("Ridgeview") on only seven occasions. [Tr. 19].[1] In addition, the ALJ noted that the Plaintiff received only intermittent conservative treatment for his mental impairments. [Tr. 19]. The ALJ also explained that the Plaintiff consistently reported that his Prozac worked well. [Tr. 19]. The ALJ concluded that there was little evidence of the Plaintiff's disabling symptoms. [Tr. 19].[2] Accordingly, the Court finds that substantial evidence supports the ALJ's decision.

---

[1] The Court notes that the Plaintiff was actually seen nine times. [Tr. 301-05; 343, 346-48].

[2] The Court notes that the entries from Ridgeview appear to the undersigned to be more in the nature of the mere recording of medical history and/or the Plaintiff's subjective complaints and ratings. Nevertheless, the Court has reviewed Ridgeview's entries, and they do not change the results therein. For example, in 2008, the Plaintiff reported that he was depressed and angry, and he felt as though his family talked negatively about him. [Tr. 306]. The notes state that the Plaintiff was oriented and displayed fair concentration abilities, but his abilities to remember, provide insight, make judgments, and control his impulse were poor. [Tr. 304]. Similar notes were made in 2009, and he also reported psychotic symptoms. [Tr. 301-03]. Later, in 2009, he reported that his Prozac was working well and that he only occasionally felt like people were watching him. [Tr. 347-48]. In 2010, the Plaintiff denied having any psychotic symptoms, and then he later reported that he occasionally felt like he was being watched. [Tr. 343, 346]. The Plaintiff was oriented and his language skills, fund of knowledge, speech, memory, concentration, insight, judgment, and impulse control abilities were all rated as fair. [Tr. 343, 346].

13

### B. Medical Listing 12.05C

The Plaintiff asserts that the ALJ failed to discuss Medical Listing 12.05C. [Doc. 14 at 17]. The Commissioner responds that the Plaintiff has not demonstrated that he meets Medical Listing 12.05C. [Doc. 18 at 7].

> Listing 12.05C provides in relevant part:
>
> 12.05 Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . . .
>
> > C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Normally, a claimant can establish disability by demonstrating all of the medical findings listed for an impairment. 20 C.F.R. § 404.1525(c)(3). "If a claimant does not have one of the findings, however, [he or] she can present evidence of some medical equivalent to that finding." Bailey v. Comm. Soc. Sec., No. 09-6389, 413 F. App'x 853, 854 (6th Cir. Mar. 11, 2011) (citing §§ 404.1525 & 404.1526). To demonstrate such a medical equivalent, the claimant must present "medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan v. Zebley, 493 U.S. 521, 531 (1990) (emphasis in original).

14

Thus, to be disabled under Listing 12.05C, the Plaintiff must establish that: (1) his valid verbal, performance, or full scale IQ score was between 60 and 70; (2) he had significantly subaverage general intellectual functioning with deficits in adaptive functioning, which manifested prior to age 22; and (3) he has a mental or physical impairment imposing an additional and significant work-related limitation.

In the decision, the ALJ states that the Plaintiff's mental impairment does not meet or medically equal the criteria of listings 12.02, 12.04, and 12.09. [Tr. 16]. <u>The ALJ did not mention or discuss Medical Listing 12.05C</u>.

In support of his argument, the Plaintiff cites <u>Abbott v. Sullivan</u>, 905 F.2d 918 (6th Cir. 1990). Pursuant to <u>Abbott</u>, the undersigned has previously held that, where the record contained IQ scores under 70, an ALJ was required to expressly analyze Plaintiff's impairments under § 12.05(C). <u>Isham v. Astrue</u>, No. 3:08-cv-423, 2010 WL 1957362, *6 (E.D. Tenn. Jan. 13, 2010), <u>adopted</u> 2010 WL 1957312, at *1 (E.D. Tenn. May 14, 2010). However, Magistrate Judge Susan Lee of the Eastern District of Tennessee recently considered whether such scores require analysis in all cases. In light of <u>Foster v. Halter</u>, 279 F.3d 348 (6th Cir. 2001), Judge Lee concluded that "an IQ score of 70 or less may not always raise a substantial question as to whether a claimant is mentally retarded" and may not always require explicit discussion. <u>McClellan v. Astrue</u>, 804 F. Supp. 2d 678, 691 (E.D. Tenn. 2011). Judge Lee found that a court should consider "whether there was a 'substantial question' regarding whether Plaintiff met listing 12.05C" in determining if remand was appropriate. <u>Id.</u> at 692. The undersigned finds that such an approach is

15

well-reasoned. See Hall v. Astrue, No. 3:11-cv-571, 2012 WL 6924162, at *7 (E.D. Tenn. Dec. 11, 2012), adopted 2013 WL 264321, at *1 (E.D. Tenn. Jan. 23, 2013).

In this case, the Court finds there was a substantial question regarding whether the Plaintiff met Listing 12.05C. The Plaintiff has obviously met the first of the 12.05C criterion through his verbal IQ score of 70. [Tr. 233]. In addition, the record establishes that the ALJ has found that the Plaintiff has severe impairments—including status post pacemaker, adrenal and thyroid deficiency, and depressive disorder, not otherwise specified—which inhibit his ability to work. [Tr. 14]. Based on the evidence of physical and mental limitations and these findings, the Court finds that the third criterion, that is, physical or mental impairment imposing an additional and significant work-related limitations—is fulfilled. Thus, the Court must now address whether the Plaintiff has demonstrated sub average general intellectual functioning that would fulfill the second criterion.

In arguing that he satisfies Listing 12.05C, the Plaintiff argues that he was in special education throughout school and that he stopped formal education in the tenth grade. [Doc. 14 at 19]. The Plaintiff adds that he was only able to read at a 4.9 grade level, and he performed math at a 3.8 grade level. [Id.]. In addition, he argues that he never obtained a driver's license;[3] other people handle his finances and personal needs; and that his past work consists of low-level unskilled jobs. [Id.].

---

[3] The Court notes that although the Plaintiff has never obtained a license, there is evidence in the record that the Plaintiff drives. [Tr. 264]. On March, 23, 2009, Dr. Misra noted, "He can drive though he doesn't have a license." [Tr. 264].

16

The Court finds that there is evidence in the record that Plaintiff's difficulties manifested during the developmental period. For example, Dr. Allred noted that the Plaintiff was enrolled in special education classes in school and that he functioned within the borderline intellectual functioning range. [Tr. 231, 234]. See McClellan, 804 F. Supp. 2d at 693 (finding a substantial question existed with regard to the second criterion when the plaintiff was held back in the first grade and was in special education classes in the seventh and eighth grades); see also Fury v. Comm'r, No. 5:11-cv-1660, 2012 WL 4475661, at *3 (N.D. Ohio Sept. 26, 2012) (finding a substantial question existed with regard to the second criterion when the plaintiff attended special education classes and the consultative examiner concluded that the plaintiff functioned within the lower borderline range of intelligence). The Court also notes, however, that there is evidence in the record that the Plaintiff's deficits may have not manifested during the developmental period. For example, the Plaintiff later received his general education degree. [Tr. 231]. He also reported that he began welding in high school and that he finished his welding certification while in the Jobs Corps in 1985. [Tr. 145].

In light of this conflicting evidence, the Court concludes there is a substantial question regarding Plaintiff's eligibility for listing 12.05C. See McClellan, 804 F. Supp. 2d at 693 (stating that because there was conflicting evidence, "it was not obvious from the record that [p]laintiff could not meet the listing"). Accordingly, the Court finds that the Plaintiff's allegation that the ALJ erred by not considering Listing 12.05C is well-taken, and the undersigned will remand this case to the Commissioner for analysis of

Listing 12.05C.  The Court will not order the Commissioner to obtain an additional psychological examination, because the determination of whether the Plaintiff demonstrated the intellectual functioning criterion before age twenty-two is unlikely to be aided by new tests.  The Commissioner or the Plaintiff, however, may order whatever tests they feel are appropriate to facilitate swift disposition of this matter.

## VI.    CONCLUSION

Based on the foregoing, the Court **GRANTS** the Plaintiff's Motion for Judgment on the Pleadings [**Doc. 13**] and **DENIES** the Commissioner's Motion for Summary Judgment [**Doc. 17**].  The Court **REMANDS** to the Commissioner for analysis and application of Listing 12.05C in a manner consistent with this opinion.

ENTER:

s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE

ENTERED AS A JUDGMENT

s/ Debra C. Poplin
CLERK OF COURT